## W. F. WILLIAMS *vs.* JOSEPH E. ROBINSON.

### Kennebec. Opinion February 20, 1882.

*Statute of frauds. Contracts. Evidence. New trial. Practice.*

To take a contract for the sale of more than thirty dollars' worth of goods, out of the statute of frauds, (R. S., c. 111, § 4,) "the note or memorandum thereof" need not contain a recital of the consideration, but that may be proved by parol.

The memorandum need be signed by one ŏnly of the parties, but it must mention the other.

The memorandum must contain within itself or by some reference to other written evidence the names of vendor and vendee, and all the essential terms and conditions of the contract expressed with such reasonable certainty as may be understood from the memorandum or other written evidence, referred to, if any, without the aid from parol testimony.

When a memorandum containing the names of the vendor and vendee is made, signed and delivered by the vendor to the vendee, and accepted as and for a completed memorandum of the essential terms of a contract, and it is capable of a clear and intelligible exposition, it is conclusive between the parties, and parol evidence is not competent to vary its terms or construction; and if in fact some of the conditions actually made be omitted from it, the party defendant cannot avail himself of them.

Parol evidence identifying the subject matter of a contract does not destroy the sufficiency of the memorandum.

A new trial cannot be granted upon a question not raised at *nisi prius.*

ON EXCEPTIONS from superior court.

Assumpsit for damages for alleged breach of contract.

At the trial the plaintiff offered in evidence the following paper, which was objected to by the defendant as insufficient, under the statute of frauds, because it shows no consideration, and is indefinite as to the amount to be delivered; but it was admitted by the court:

"Augusta, June 8, 1880.  I hereby agree to furnish M. F. Williams of New Haven, (post office address West Haven,) eight hundred to one thousand tons of ice, delivered on board vessels at Augusta, Maine, properly packed for a voyage to New Haven, for the sum of two dollars per ton.

Bond Brook Ice Company,<br>.   J. E. Robinson, Augusta, Maine."

The presiding judge instructed the jury as follows: That "it was incumbent upon the plaintiff to satisfy the jury by a preponderance of the evidence, that the contract set out in the writ was entered into substantially as therein set forth by this defendant, and at the time of the alleged breach, it was a valid, binding contract on the part of this defendant.   When he thus establishes the defendant's liability under that contract, the burden will be upon the defendant to satisfy you that he has performed, or in some way relieved himself from the obligation thus established."

The court instructed the jury that "the day of the breach of the contract was the time when the ice should have been delivered after demand made by plaintiff and notification from him that he was ready to receive the ice."

The defendant, having introduced testimony tending to prove the facts assumed in the instructions asked for, requested the court to instruct the jury as follows:

1. "That if the jury found it was agreed upon by the parties that the ice was all to be delivered by the last of July, the memorandum introduced by the plaintiff not containing such a stipulation, it was insufficient, and the plaintiff cannot recover."

2. "That if the jury was satisfied from the evidence that the forwarding a draft for the sum of seven or eight hundred dollars by the plaintiff immediately upon his return to New Haven, and before any ice was shipped, was one of the conditions of the

bargain, the memorandum relied upon, was insufficient, and the plaintiff could not recover."

3. "That if the jury find that the ice was to be delivered by successive shipments, at different times, and that a draft for a sum covering any such shipments was to be sent before any such shipment was made,—no such condition or stipulation appearing in the memorandum, it is insufficient, and the plaintiff cannot recover."

In relation to the Bond brook ice referred to in the judge's charge, *William W. Ward*, called by plaintiff, testfied:

*Question.* Did you observe the quality of the Robinson ice?

*Answer.* I did. It was ice I should say, cakes about twenty-two to twenty-four inches through, about the same thickness, and about four feet long, and the handsomest ice I ever saw. There was not a particle of snow on it, and they were just as square as bricks, as handsome ice as I ever saw, that was then loading at the vessel. And afterwards I went up to the house and saw it there.

*Question.* How did that correspond with the ice you have just described?

*Answer.* It was the same I saw at the dock.

*Daniel B. Snow*, called by defendant:—I went to Robinson's with the plaintiff. Plaintiff said he would like to see the ice, and Robinson told me to go with him and show him the ice. I went with him, and he saw it. I showed him the ice at the ice house. He said it was good ice. .

The court instructed the jury as follows: "I instruct you, that the plaintiff, as well as the defendant, must be bound by the language in this contract. It does not call for first quality of ice. It does not call for Bond brook ice. The defendant might have gone into the market and fulfilled his obligation imposed by this contract, by furnishing any merchantable ice in this market."

The several instructions requested by the defendant, were not given, except as appears in the charge.

To the above instructions and rulings, and refusals to rule and instruct, the defendant alleged exceptions.

The following is so much of the charge of the presiding justice as related to matters stated in the requested instructions:

"' No contract for the sale of any goods, wares, or merchandise, for thirty dollars or more, shall be valid, unless the purchaser accepts and receives part of the goods, or gives something in earnest to bind the bargain, or in part payment thereof, or some note or memorandum thereof is made and signed by the party to be charged thereby, or by his agent.'"

"And obviously the clause in controversy here, is whether there was some note or memorandum of the contract alleged to have been made in this case, made and signed by this defendant, the party to be charged. This, you will perceive, is simply a note or memorandum of the contract which is requisite to take the case out of the statute of frauds, as it is called; that is, in order that a party who has entered into a contract of this kind, who has been a party to it by word of mouth, may have a remedy at law to enforce a contract thus made by word of mouth. The defendant claims in the first place, that this is not a valid and sufficient memorandum within the meaning of this statute, because it does not comprise, he says, all of the essential elements and terms of the contract which was, in fact, entered into by these parties. In order that a note or memorandum should be sufficient and valid within the meaning of this statute, it is requisite, gentlemen, that it should contain all of the essential elements and terms of the contract entered into by the parties. And parol evidence, as has been ruled in this case, may be received, that is, the statements of the parties or their witnesses who were present at the time the contract was made, may be received to show that there was some other element in the contract, some other proposition or condition insisted upon by the parties, by the one side or the other, as essential, which was not, in fact, incorporated into this memorandum, and in such a case the memorandum would not be valid and sufficient within the statute of frauds, and the party could not be charged by it. It is claimed here on the part of the defendant, in the first place, that this is not sufficient, because, it is said, there was some discussion, there was an agreement, in fact, it is claimed, between these parties, not appearing in this memorandum in reference to the mode and time of payment."

"Nothing whatever is said, you will have observed from the reading of this memorandum, in reference to the mode or time of payment. The memorandum reads : . .. . Now what is the legal effect of an instrument like that, in reference to the mode and time of payment? Where the parties have failed to make any stipulation in reference to it, the law comes in and says that the party shall be compelled to pay when the goods are delivered. Cash on delivery, in other words, is the concise expression of the rule of law which is presumed to exist where the parties fail to make any written stipulation in regard to it. As the rule has been very well expressed in an approved work, (this, however, is a citation from a prominent authority), I will read to you a few sentences : 'The promise to deliver, involved in an agreement of sale, and the promise to pay the purchase money, are mutually dependant.'"

"'Neither party is bound to perform without contemporaneous performance by the other. Payment of the price is the condition upon which alone the purchaser can require the seller to complete the sale, by delivery of the property. But it is so at the option of the seller. If he proceeds to deliver without insisting upon payment, and without qualifying the act in some way, the condition or mutual dependence is waived or severed. . . . If, however, the delivery and payment are to be simultaneous, and the goods are delivered in the expectation that the price will be immediately paid, the refusal to make payment will be such a failure on the part of the purchaser to perform the contract as to entitle the vendor to put an end to it and reclaim the goods.' This explains the rights of the parties under this contract in reference to the payment."

"Now if you find, as matter of fact, under the evidence in this case, that there was an agreement between these parties in reference to the mode and time of payment, essentially and materially different from this presumption of law which I have. explained to you, that that was insisted upon by the defendant as an essential element of the contract and made a condition of the contract, then that not appearing in this memorandum, I instruct you as matter of law that the memorandum would not

be sufficient, and the defendant could not be charged by it. And you will consider what the evidence was in relation to that point; whether the agreement, if any agreement was made by the minds of these two parties mutually meeting upon any proposition, definitely, in reference to the mode and time of payment, was any different in effect from this presumption of law, namely, cash on delivery, to which I have called your attention. And that does not mean delivery at West Haven, but means delivery according to the defendant's own proposition, 'on board vessel at Augusta.' If, therefore, you should find upon this rule of law that this was a sufficient memorandum in that respect, then the defendant claims still further that there was no consideration for this as a contract. None is expressed in it."

"I instruct you as matter of law, that if you find that the parties made this parol contract, that this plaintiff, by word of mouth, agreed to pay two dollars per ton for this ice delivered on board ship at Augusta, that parol agreement to pay the price on his part, would be a sufficient consideration for that contract, although it does not appear in this memorandum of the contract signed by the defendant to be charged by it. And so far as that point is concerned, the defendant would be liable."

*Baker and Baker*, and *L. C. Cornish*, for the plaintiff, cited: R. S., c. 111, § § 1, 4; *Wain* v. *Warlters*, 5 East. 10; *Saunders* v. *Wakefield*, 4 B. and Ald. 595; *Egerton* v. *Mathews*, 6 East. 307; *Allen* v. *Bennett*, 3 Taunt. 169; *Sievewright* v. *Archibald*, 17 Q. B. 103; *Packard* v. *Richardson*, 17 Mass. 122; *Levy* v. *Merrill*, 4 Maine, 180; *Gillighan* v. *Boardman*, 29 Maine, 79; *Cummings* v. *Dennett*, 26 Maine, 397; Browne Stat. Frauds, § § 389–400; *Hawes* v. *Armstrong*, 1 Bing. N. R. 565; *Raikes* v. *Todd*, 8 Ad. and E. 546; *Stadt* v. *Lill*, 9 East. 543; *Caballen* v. *Slater*, 23 L. J. C. P. 68; *Church* v. *Brown*, 21 N. Y. 315; *Benedict* v. *Sherill*, Hill and D. (N. Y.) 219; *Williams* v. *Ketchum*, 19 Wis. 231.

*S. and L. Titcomb*, for the defendant.

1. The paper offered in evidence by the plaintiff, and admitted was insufficient under the statute of frauds, and the essential

requisites cannot be supplied by parol evidence. *Wain* v.. *Warlters*, 5 East. 16 ; *Wright* v. *Weeks*, 3 Bosw. 372 ; *Hagan* v. *Domestic S. M. Co.* 16 ; N. Y. Sup. Ct. 73 ; 25 N. Y. 153 ; *Stocker* v. *Partridge*, 2 Robertson, 202 ; *Emerson* v. *Slater*, 22 Howard, U. S. 42 ; *Moore* v. *Campbell*, 10 Excheq. 323 ; *Goodwin* v. *Griffith*, 1 Hurd and Norw. 57 ; *Nesham* v. *Shelby*, 2 Moak's (Eng.) R. 315 ; *Horton* v. *McCarty*, (and note) 53 Maine, 394 ; *Grace* v. *Denison*, 114 Mass. 17 ; *Lang* v. *Henry*, 54 N. H. 57 ; 2 Greenl. Ev. § 268 ; *Boston and Maine R. R.* v. *Babcock*, 3 Cush. 228 ; *Smith* v. *Webster*, 17 Moak's (Eng.) 797 (and note) ; *McElroy* v. *Buck*, 35 Mich. 434.

2. The memorandum purports to bind one party only, and recent decisions do not favor sustaining a contract where one party is bound and the other is not. *Nesham* v. *Shelby*, 2 Moak's (Eng.) R. 315.

In *Vantassel* v. *Hathaway*, 53 Maine, 18, on a memorandum signed by the plaintiff : "This is to certify that I will let T. J. Vantassel have the house he built and formerly occupied, any time by his paying me within one hundred dollars what it cost me." The court say "It is obvious that there is no mutuality. The plaintiff was under no obligation to take the house and pay for the same. . . . . Nor does the case show that there was any consideration whatever for the alleged promise. . Being without consideration it could not be enforced."

3. By the R. S. of Maine of 1840, c. 136 § 2, "The consideration of any such promise, contract or agreement, need not be set forth, or expressed, in the writing signed by the party to be charged therewith, but may be proved by any other legal evidence." The R. S. of 1857, c. 111, § 2, contained the same provision. But in the revision of 1871, all the chapters of the R. S., of 1857 were repealed, by the repealing act, approved March 24, 1870, and this provision was not retained or included in the R. S., c. 111 of 1871. In the re-enactment of the R. S., of 1836 by the Gen. Stat. of 1860, c. 105, § 2, in Massachusetts, this provision was inserted. All decisions by the courts in Massachusetts thus far to the effect, that the consideration need not be expressed in the memorandum but may be proved *aliunde*,

as well as those in Maine, rendered when this statute was in force, and prior to the repeal of this section in 1870, can have no binding force or authority in the decision of cases arising since its repeal. In *Wain* v. *Warlters*, 5 East. 10, cited with approval in Benjamin on Sales, § 232, and in Brown on Stat. of Frauds, § 387, the court say : "It seems necessary for effectuating the object of the statute, that the consideration should be set down in writing as well as the promise." And the doctrine of *Wain* v. *Warlters*, has been followed in the English courts to the present time. *Smith* v. *Webster*, (1876) 17 Moak's (Eng.) R. 789.

4. The instructions requested by the defendant were specific, clearly pertinent, were not covered by the charge, were necessary, under the evidence for the guidance of the jury, and should have been given. *Linscott* v. *Trask*, 35 Maine, 150 ; *Whipple* v. *Wing*, 39 Maine, 424.

5. Although exceptions may not lie to a statement made by the judge to the jury of what facts the evidence in his view, proves, still the instruction given under the evidence admitted, was erroneous. If the parties were bound by the language of the contract, and evidence was admitted without objection, by which the subject matter of the contract, to wit : Bond Brook ice, was distinctly identified by the parties, and by which Bond Brook ice was called for ; but not being named in the memorandum, such evidence being admitted, would prove a different contract from that indicated in the memorandum, and the jury under the instruction, given, would be left in doubt, whether they should regard the verbal or written contract.

Virgin, J. At common law, mutual executory contracts for the sale and purchase of goods, wares and merchandise, of whatever value, and however provable, were binding and enforceable. The statute of frauds intervened and prescribed the kind of evidence by which alone they might be established, by entailing upon the parties of certain specified classes of contracts the disability of enforcing them so long as their essential terms remained in mere unwritten words. The statute did not declare

such contracts illegal, or void, but simply said they should not be actionable, with certain exceptions, unless evidenced by written evidence.

Thus the section invoked by this defendant provides, in substance, that when an oral executory contract for the sale and purchase of goods, wares and merchandise, valid at common law, involves property of the value of thirty dollars or more, and the purchaser receives and accepts no part of it, nor gives anything by way of earnest or in part payment thereof, it shall not be valid for the purpose of enforcement, unless some note or memorandum thereof be made and signed by the party to be charged. thereby, or by his agent. R. S., c. 111, § 4. The "note or memorandum" of the contract, cannot, of course, be the contract itself, but the evidence by which it is to be proved, if the defendant requires it, in the trial of an action at law brought to recover damages for its breach, or of a bill instituted to enforce specific performance. *Lawrence* v. *Chase*, 54 Maine, 196; *Bird* v. *Munroe*, 66 Maine, 337, 343–4; *Middlesex Co.* v. *Osgood*, 4 Gray, 447.

The memorandum need be signed by one only of the parties— the party to be charged. *Barstow* v. *Gray*, 3 Maine, 409; *Getchell* v. *Jewett*, 4 Maine, 350, 366; or by both, *Atwood* v. *Cobb*, 16 Pick, 227; or counterpart memoranda may be made and signed by the respective parties. *Small* v. *Quincy*, 4 Maine, 497. So that if a mutual oral executory contract, valid at common law, be made, and one of the parties obtain from the other the "note or memorandum" thereof contemplated by the statute, but does not give a corresponding one, he may enforce it although the other cannot, the former having secured, while the other has not, the evidence which the statute has made indispensable to its enforcement. *Rogers* v. *Saunders*, 16 Maine, 92, 97; *Laythoarp* v. *Bryant*, 2 Bing. N. C. (29 E. C. L.) 469.

At common law, while every simple contract, whether oral or written, must be founded on a legal consideration, it need not be expressed in the writing itself, for parol evidence is admissible to prove it. *Cummings* v. *Dennett*, 26 Maine, 397; *Bean* v.

*Burbank*, 16 Maine, 458. Nor did the statute of frauds, even before the amendment expressly declaring it unnecessary, ever require the consideration to be recited in the note or memorandum signed by the party to be charged. *Packard* v. *Richardson*, 17 Mass. 122 ; *Levy* v. *Merrill*, 4 Maine, 180, 189 ; *King* v. *Upton*, 4 Maine, 387 ; *Getchell* v. *Jewett*, 4 Maine, 350, 366 ; *Gillighan* v. *Boardman*, 29 Maine, 81. In *Bean* v. *Burbank, supra,* and *Vantassel* v. *Hathaway*, 53 Maine, 18, no acceptance of the contract or other consideration was attempted to be proved. The distinction between § § 4 and 17 of the St. 29 Car. II, c. 3, corresponding to R. S., c. 111, § § 1, 4, set up in the English courts and followed by some of the courts of some of the States, was never recognized in this state, the question having been settled in Massachusetts in *Packard* v. *Richardson, supra.*

But while, as before seen, the memorandum need not necessarily mention the consideration, that being provable by parol testimony, nevertheless, in order that the court may ascertain the rights of the parties from the writing itself without resort to oral testimony (*Riley* v. *Farnsworth*, 116 Mass. 223, 225–6), to satisfy the statute, the memorandum must contain within itself or by some reference to other written evidence, the names of the vendor and vendee and all the essential terms and conditions of the contract, expressed with such reasonable certainty as may be understood from the memorandum and other written evidence referred to, (if any) without any aid from parol testimony. *O'Donnell* v. *Leeman*, 43 Maine, 158 ; *Jenness* v. *Mt. H. I. Co.* 53 Maine, 20 ; *Horton* v. *McCarty*, 53 Maine, 394, 396 ; *Washington I. Co.* v. *Webster*, 62 Maine, 341. And when a memorandum is made and signed and delivered between the parties as and for a complete memorandum of the essential terms of a contract, and it is capable of a clear and intelligible exposition, it is conclusive between the parties and parol evidence is incompetent to contradict or vary its terms or construction ; and if, in fact, some of the conditions actually made be omitted from it, the party defendant cannot avail himself of them. *Small* v. *Quincy*, 4 Maine, 497 ; *Coddington* v. *Goddard*, 16 Gray,

436; *Hawkins* v. *Chace,* 19 Pick. 502; *Ryan* v. *Hall,* 13 Met. 523; *Warren* v. *Wheeler,* 8 Met. 97; *Cabot* v. *Winsor,* 1 Allen, 546, 551; *Remick* v. *Sandford,* 118 Mass. 102, 106, 2 Whart. Ev. § 901, and notes.

Such is the general rule governing written contracts; and the statute of frauds leaves it together with its exceptions as it found them. Benj. Sales, § 205.

By the enactment of this statute, the legislature interposed a few safeguards against mistakes and frauds in certain kinds of contracts, by making certain additional things indispensable to the remedy. The security thereby afforded makes the remedy depend upon proof which shall not rest upon the recollection or integrity of witnesses, but upon something reliable to which the parties may resort for a solution of all their doubts and disputes, the signature thereto, serving *inter alia,* to identify the evidence by which the signer is to be bound. And when a memorandum, like the one now before us, has been deliberately made, executed and delivered in conformity with the statute, and its terms are sensible and free of all ambiguity, it cannot be varied as to its substance by parol; otherwise the great purpose of the legislature would be thwarted.

Applying these principles to the case at bar, and the exceptions so far as the question of consideration and the three requested instructions are concerned, must be overruled.

The jury must have found under the charge, that the memorandum was made, signed and unconditionally delivered by the defendant to the plaintiff, as and for a complete memorandum of the contract, so far as the matters contained in the request go, and that the consideration was proved. Its terms are clearly expressed and contain all the elements necessary to give it legal effect as a written contract.

The instruction in relation to the kind of ice to be delivered, related wholly to the question of damages (as will be seen by the latter part of the charge where it occurs), and was favorable to the defendant, wherefore he was not aggrieved. Moreover the question which he now raises was not made at the trial. And if it had been, we do not think the memorandum need state in

*totidem verbis* that the ice intended by the parties was Bond brook ice ; for that is implied by the signature to the memorandum. *Johnson* v. *Raylton,* (L. R.) 7 Q. B. D. 438 ; S. C. 24 Al. L. J. 470. Moreover parol evidence identifying the subject matter of the contract does not destroy the sufficiency of the memorandum, but when the subject matter is thus ascertained, the memorandum may be construed to apply to it. *Mead* v. *Parker,* 115 Mass. 413 ; *Slater* v. *Smith,* 117 Mass. 96 ; *Swett* v. *Shumway,* 102 Mass. 365.

*Exceptions overruled.*

APPLETON, C. J., WALTON, BARROWS, DANFORTH and SYMONDS, JJ., concurred.